UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSE RUIZ, on behalf of himself and                     CIVIL ACTION
other persons similarly situated
                                                         NO. 18-5721
VERSUS
                                                         SECTION M (2)
MASSE CONTRACTING, INC. AND
BOLLINGER SHIPYARDS, L.L.C.

## ORDER & REASONS

Before the Court is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, or alternatively, motion to dismiss under Rule 12(b)(7) for failure to join necessary parties, or motion for a more definite statement pursuant to Rule 12(e), filed by defendants Masse Contracting, Inc. ("Masse") and Bollinger Shipyards, L.L.C. ("Bollinger") (collectively, "Defendants").[1] Plaintiff Jose Ruiz ("Ruiz") filed a memorandum in opposition,[2] to which Defendants replied.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.    BACKGROUND**

Ruiz brought this action, on behalf of himself and others similarly situated, raising claims under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages.[4] Ruiz, a resident of Morgan City, Louisiana, alleges that Masse hired him in 2015 to work as a pipefitter at Bollinger's shipyard in Amelia, Louisiana, and he held that job for approximately three years.[5] Ruiz alleges that Bollinger employed at its Amelia shipyard at least 200 workers whose services

---

[1] R. Doc. 8.
[2] R. Doc. 10.
[3] R. Doc. 15.
[4] R. Doc. 1 at 1.
[5] *Id.* at 2.

were obtained from labor subcontractors.[6] Masse was one of those labor subcontractors and supplied about 50 of the workers at Bollinger's Amelia shipyard.[7] Ruiz alleges that he was employed by both Masse and Bollinger, and that both entities supervised his activities, determined his work schedule, and kept an employment file on him.[8] However, Ruiz also alleges that Bollinger largely "supervise[d] and control[led] the workers as *de facto* employees," but that Masse paid him.[9]

Ruiz alleges that he normally worked more than forty hours per week, and "[o]n average worked at least sixty-seven hours per week."[10] Ruiz alleges that his regular rate of pay was $13.00 per hour, and he received overtime pay of $19.50 per hour and a $70.00 per diem for days he worked at least five hours.[11] He further alleges that he did not incur any expenses in furtherance of Defendants' interests that would qualify as reimbursable per diem payments under the FLSA, and thus the payments to him amounted to "disguised wages" that Defendants did not include in calculating Ruiz's overtime premium pay.[12]

Ruiz seeks to represent two classes.[13] The first proposed class is the "Amelia Overtime Class," consisting of:

> all current and former employees of Defendants at the Bollinger Shipyard in Amelia, Louisiana, who are or have been employed by Bollinger, either through Masse or another labor subcontractor, during the three years immediately preceding the filing of this suit as hourly employees and who, during that period, received daily per diem payments and worked in excess of forty hours in any work week and failed to receive the correct rate of premium pay, a rate of one-and-a-half times their regular rate of pay, for all hours worked in excess of forty in a workweek.[14]

---

[6] *Id.* at 5.
[7] *Id.*
[8] *Id.* at 2-4.
[9] *Id.* at 4-5.
[10] *Id.* at 5.
[11] *Id.* at 2.
[12] *Id.* at 5 & 7.
[13] *Id.* at 6-8.
[14] *Id.* at 6.

The second proposed class is the "Masse Overtime Class," consisting of:

> all current and former employees of Masse who are or have been employed by Masse during the three years immediately preceding the filing of this suit as hourly employees and who, during that period, received daily per diem payments and worked in excess of forty hours in any work week and failed to receive the correct rate of premium pay, a rate of one-and-a-half times their regular rate of pay, for all hours worked in excess of forty in a workweek.[15]

## II. PENDING MOTION

Defendants filed the instant motion to dismiss arguing that Ruiz's complaint does not adequately allege FLSA claims against them and fails to include necessary parties.[16] In particular, Defendants argue that Ruiz does not allege facts demonstrating that the per diem payments were improper because he does not allege when he received such payments, whether he always received the same amount, whether he received the payments no matter his worksite, or whether he received the payments regardless of what expenses he incurred on his employer's behalf.[17] Defendants also argue that Ruiz did not allege the time periods at issue or the amount of overtime compensation due with sufficient factual specificity because he did not identify any workweek or workweeks in which he worked more than forty hours without receiving proper overtime pay.[18] Further, Defendants argue that Ruiz did not properly plead a collective action under the FLSA because the two proposed classes are too general and fail to demonstrate that other potential claimants are similarly situated in that (1) subcontractor employers other than Masse are implicated in the proposed Amelia Overtime Class, and (2) the geographic location and job duties potentially involved in the Masse Overtime Class are too divergent.[19] Finally, Defendants argue that Ruiz has not properly pleaded that Bollinger was his employer because he

---

[15] *Id.* at 7.
[16] R. Doc. 8-1.
[17] *Id.* at 9-11.
[18] *Id.* at 11-13.
[19] *Id.* at 14-16.

3

does not allege that Bollinger had the power to hire and fire him or set his rate of pay.[20] Rather, according to Defendants, the complaint points to Masse as Ruiz's employer, as it alleges he was hired and paid by Masse.[21]

Defendants also argue that Ruiz's FLSA collective action claim against Bollinger should be dismissed because it implicates unnamed subcontractors.[22] Defendants argue that these other subcontractors are necessary parties "[i]f the Court is inclined to allow Plaintiff to seek overtime from entities who were not his employers."[23]

Alternatively, under Rule 12(e), Defendants argue that Ruiz should be required to file a more definite statement addressing the following items:

1. "how Defendants' alleged practice of paying per diem violates the FLSA or why the alleged per diem should have been factored into his regular rate of pay for the purposes of calculating his overtime pay including the time periods of when he received per diem, the conditions of his receipt of per diem, [and] the expenses he incurred or didn't incur."[24]

2. "the approximate date ranges and number of hours worked for which he claims he was undercompensated and his job duties."[25]

3. "how members of the two proposed putative classes are similarly situated including the identity of other alleged subcontractors, whether Plaintiff actually worked for those unidentified subcontractors, whether all putative class members were paid a per diem, what that per diem was, the conditions for paying per diem, and how the payment of per diem violated the FLSA, and descriptions or details about individuals at the various worksites."[26]

4. "Bollinger's status as Plaintiff's employer and the putative class members including the factors under the economic realities test."[27]

---

[20] *Id.* at 16-19.
[21] *Id.*
[22] *Id.* at 19-20.
[23] *Id.* at 19.
[24] *Id.* at 20.
[25] *Id.*
[26] *Id.*
[27] *Id.* at 21.

Ruiz responds that his complaint should not be dismissed, and he should not be required to file a more definite statement, because his complaint adequately puts Defendants on notice of his claims.[28] He says he adequately alleged that Defendants violated the FLSA by improperly disguising wages as per diem payments so as to avoid including those amounts in the calculation of overtime premium wages.[29] Ruiz also argues that he put Defendants on notice of his dates of employment (2015 to 2018) and the amount of unpaid overtime, having alleged that he normally worked more than forty hours per week – on average, at least sixty-seven hours per week.[30]

Further, Ruiz argues that his class allegations put Defendants on notice of the proposed classes and adequately explain that the "classes are limited to only those [individuals] who were paid an hourly rate, received a daily per diem, worked over 40 hours in a work week, did not receive the proper overtime rate of pay, and thus were subject to the same policy of regular wages characterized as per diems and improperly excluded from the calculation of their overtime rate of pay."[31] Ruiz contends that Defendants' motion to dismiss is trying to short-circuit the class certification process, and that a proposed class can be narrowed, if found to be too broad, following discovery and briefing on class certification.[32]

Finally, Ruiz argues that he has sufficiently alleged that Bollinger was his employer by alleging that Bollinger supervised his work, set his schedule, and had an employment file on him.[33] Ruiz says he is entitled to discovery to determine if Bollinger indeed meets the economic reality test so as to be considered his employer under the FLSA.[34]

---

[28] R. Doc. 10.
[29] *Id.* at 1-3.
[30] *Id.* at 3-4 (citing, *inter alia*, R. Doc. 1 at 5).
[31] *Id.* at 4-10.
[32] *Id.* at 5, 7-8.
[33] *Id.* at 9-10.
[34] *Id.*

5

As to Defendants' alternative motions, Ruiz urges that the Amelia Overtime Class's potential implication of unnamed labor subcontractors does not justify dismissal.[35] Further, Ruiz argues that Defendants' arguments regarding a more definite statement are the same as their arguments in favor of dismissal, and thus that a more definite statement is not required because his complaint is adequate.[36]

### III. LAW & ANALYSIS

#### A. Defendants' Motion to Dismiss for Failure to State a Claim

##### 1. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

---

[35] *Id.* at 10-11.
[36] *Id.*

550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*,

7

540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 2. The FLSA

The FLSA mandates that employers pay covered employees overtime wages for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). If the employer fails to do so, it "shall be liable to the employee or employees affected in the amount of … their unpaid overtime compensation." *Id.* § 216(b). To state a claim for unpaid overtime or minimum wages under the FLSA a plaintiff must plead: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res., Inc.,* 758 F.3d 627, 630 (5th Cir. 2014). Defendants contend that Ruiz did not plead enough facts concerning the first element (as to Bollinger), and the third and fourth elements (as to both Defendants).

#### a. Employer-Employee Relationship

The FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Similarly, "employee" is defined as "any individual employed by an employer." *Id.* § 203(e)(1). Because these

definitions are vague, courts use the "economic reality test" to determine FLSA coverage. *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010).

"The touchstone of 'economic reality' in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency." *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1189 (5th Cir. 1979). In other words, courts must consider whether "the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit." *Id.* (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1979)).

Under the economic reality test, courts evaluate "'whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). (quoting *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012)). The plaintiff "need not establish each element in every case." *Id.* (citing *Gray*, 673 F.3d at 357). "Moreover, '[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications.'" *Id.* (quoting *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989)).

An employee may have more than one FLSA employer. 29 C.F.R. § 791.2(a) ("A single individual may stand in the relation of an employee to two or more employers at the same time under the [FLSA] …."); *see also Martin v. Bedell*, 955 F.2d 1029, 1034 n.10 (5th Cir. 1992) (quoting 29 C.F.R. § 791.2(a) and noting "that under the FLSA an individual can be employed by one employer or by more than one joint employer"). When there are multiple alleged employers, each putative employer must satisfy the economic reality test. *Orozco*, 757 F.3d at 448 (citing *Gray,* 673 F.3d at 355).

9

Ruiz's complaint plausibly alleges that Bollinger controlled his work by supervising him, setting his schedule, and maintaining an employment file on him. Further, it is also plausible that Ruiz's employment was dependent upon Bollinger's need for employees and that his pay could have been determined by whatever Bollinger paid Masse for his services. Ruiz alleges that Masse hired him to work at Bollinger, as opposed to any site where Masse had a contract to provide workers. Thus, it is reasonable to infer that Ruiz would have become unemployed had Bollinger terminated its contract with Masse. Consequently, Ruiz has plausibly alleged that Bollinger was one of his FLSA employers, while it is undisputed that Masse was the other.

### b. Violation of Overtime Wage Requirements

The FLSA requires employers to pay employees at least one-and-one-half the employee's regular hourly rate for hours worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1). "The employee's 'regular rate' of pay is thus the 'keystone' of section 7(a)," because the amount of overtime wages depends on the employee's "regular rate." *Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665, 673 (7th Cir. 2010).

The FLSA defines "regular rate" of pay as including "all renumeration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). More specifically, "the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (citations omitted). The FLSA's implementing regulations explain that the "regular rate" is calculated "by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

For the purpose of calculating overtime compensation, an employee's "regular rate" does not include "reasonable payments for traveling expenses, or other expenses, incurred by an

employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). Such per diem payments include, but are not limited to:

> (1) The actual amount expended by an employee in purchasing supplies, tools, materials, or equipment on behalf of his employer.
>
> (2) The actual or reasonably approximate amount expended by an employee in purchasing, laundering or repairing uniforms or special clothing which his employer requires him to wear.
>
> (3) The actual or reasonably approximate amount expended by an employee, who is traveling "over the road" on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business.
>
> (4) "Supper money," a reasonable amount given to an employee, who ordinarily works the day shift and can ordinarily return home for supper, to cover the cost of supper when he is requested by his employer to continue work during the evening hours.
>
> (5) The actual or reasonably approximate amount expended by an employee as temporary excess home-to-work travel expenses incurred (i) because the employer has moved the plant to another town before the employee has had an opportunity to find living quarters at the new location or (ii) because the employee, on a particular occasion, is required to report for work at a place other than his regular workplace.

29 C.F.R. § 778.217(b) (illustrative, not exhaustive, list of items that qualify as per diem payments). Further, "only the actual or reasonably approximate amount of the expense is excludable from the regular rate. If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." *Id.* § 778.217(c). Conversely, payments made by the employer for everyday expenses normally incurred by the employee for his own benefit are part of the employee's regular rate of pay and are included in overtime calculations. *Id.* § 778.217(d). Examples of such payments include "traveling to and from work,

buying lunch, paying rent, and the like." *Id.* The FLSA "requires each employee's expenses to be examined on a case-by-case basis to see whether the 'per diem' is appropriate and reasonable." *Berry v. Excel Grp., Inc.*, 288 F.3d 252, 254 (5th Cir. 2002).

Ruiz has alleged enough facts in the complaint to state a plausible claim of an FLSA violation related to the per diem payments. Ruiz's allegations put Defendants on notice that he claims he did not incur any expenses on the employer's behalf that would justify the payment of a per diem excludable from his regular rate. Thus, he contends such payments were disguised wages that were improperly excluded from his regular rate of pay in the calculation of overtime payments. These allegations state that Ruiz did not incur any qualifying expenses, why the per diem payments should have been factored into his regular rate of pay, and how Ruiz believes Defendants' per diem payments violate the FLSA. *See Atkins v. Primoris Serv. Corp.*, 2017 WL 4697517, at *2 (W.D. La. Oct. 19, 2017) (finding similar allegations sufficient under Rule 12 standard to allege an FLSA violation premised on improper per diem payments).

### c. Amount of Wages Due

A plaintiff adequately pleads the amount of overtime compensation due by alleging the date ranges of employment, the approximate number of hours worked, and the regular rate of pay. *Valle v. Beauryne Builders LLC*, 2018 WL 1463692, at *3 (M.D. La. Mar. 23, 2018) (quoting *Maldanado v. New Orleans Millworks, LLC*, 2017 WL 2472358, at *2 (E.D. La. June 8, 2017)).

Ruiz has alleged all of the aforementioned items. Specifically, he alleges that he worked for Defendants from approximately 2015 to 2018; that his regular rate of pay was $13.00 per hour, and he received overtime pay of $19.50 per hour and a $70.00 per diem for days he worked at least five hours; and that he often worked sixty-seven hours per week. Thus, Ruiz has properly alleged, and put Defendants on notice of, the amount of overtime compensation due.

*Id.* (finding similar allegations sufficient under a Rule 12 standard); *Ecoquij-Tzep v. Hawaiian Grill*, 2016 WL 3745685, at *4 (N.D. Tex. July 12, 2016) (finding similar allegations sufficient and citing other cases in accord). These allegations also put Defendants on notice of the time periods when Ruiz claims the per diem was paid – namely, on days between 2015 and 2018 when he worked more than five hours. This information is sufficient for Defendants to consult their own records and investigate Ruiz's claims. *See England v. Adm'r of the Tulane Educ. Fund*, 2016 WL 6520146, at *3-4 (E.D. La. Nov. 3, 2016) ("By identifying the relevant time period, the spreadsheet provides Defendant with enough information to search its own records to more accurately investigate Plaintiff's period of employment [and FLSA overtime claim].").

### 3. FLSA Class Allegations

An employee may sue an employer for violating the overtime provisions of the FLSA either individually or as a collective action on behalf of himself or herself and "other employees similarly situated." 29 U.S.C. § 216(b). Courts have taken two different approaches to resolve the issue of whether plaintiffs are similarly situated to a proposed class: the spurious class action approach, which originated in *Shushan v. University of Colo.*, 132 F.R.D. 263 (D. Colo. 1990); and the "two-step" approach, as in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988). The Fifth Circuit has yet to adopt either test. However, district courts in this circuit have generally applied *Lusardi*'s "two-step" approach. *See Guidry v. Target Corp.*, 2009 WL 1604591 (E.D. La. June 5, 2009); *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (the two-step approach "is the preferred method for making the similarly situated analysis").

The *Lusardi* two-step approach consists of a "notice stage" and a "decertification stage." *Mooney v. Aramco*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). At the notice stage, the court determines, based only

on the pleadings and any affidavits that have been submitted, whether the putative collective action members should receive notice of the action. *Id.* at 1214. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* "At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination.'" *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). If the district court finds that the putative collective action members are similarly situated, it conditionally certifies the class and the putative collective action members are given notice and the opportunity to opt in. *Id.* at 1214. "The action proceeds as a representative action throughout discovery." *Id.*

The decertification stage is precipitated when the defendant, after discovery is largely completed and the matter is ready for trial, files a motion to decertify the class. "At this stage, the court has much more information on which to base its decision, and makes a factual determination of the similarly situated question." *Id.* If the district court finds that the claimants are not similarly situated, it decertifies the class and dismisses without prejudice the opt-in plaintiffs' claims, and the class representatives (*i.e.*, the original plaintiffs) proceed to trial on their individual claims. On the other hand, if the district court finds that the claimants are similarly situated, it allows the representative action to proceed to trial. *Id.*

This case has not yet reached the conditional certification stage. Ruiz has not filed for class certification, proposed a notice to claimants, or had a chance to develop a record related to the similarly-situated question. Defendants move to dismiss (or for a more definite statement) arguing that Ruiz should allege:

> how members of the two proposed putative classes are similarly situated including the identity of other alleged subcontractors, whether Plaintiff actually worked for those unidentified subcontractors, whether all putative class members

>were paid a per diem, what that per diem was, the conditions for paying per diem, and how the payment of per diem violated the FLSA, and descriptions or details about individuals at the various worksites.[37]

Most of this information is known only to Defendants, not Ruiz.

Defendants' "challenge on the pleadings seeks to end-run the certification process by trying certification on the face of the complaint." *Lang v. DirectTV, Inc.*, 735 F. Supp. 2d 421, 435-36 (E.D. La. Aug. 13, 2010). At the certification stage, this Court will analyze whether the putative class members are similarly situated, and whether certification is otherwise appropriate. To consider Defendant's arguments against certification "now would be premature." *Id.* at 436.

### B. Defendants' Motion to Dismiss for Failure to Add Necessary Parties

Rule 12(b)(7) permits a party to move to dismiss an action for failure to join a party under Rule 19. Rule 19 requires that a plaintiff join as a party "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction … if in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

Defendants argue that Bollinger's unnamed labor subcontractors are necessary parties "if the Court is inclined to allow Plaintiff to seek overtime from entities who were not his employers."[38] But Ruiz has not prayed for such relief. Rather, Ruiz seeks to represent a class of persons who were employed by Bollinger at its Amelia shipyard, even if Bollinger contracted their labor through a subcontractor other than Masse. In other words, Ruiz seeks to represent others with whom he was similarly situated with respect to Bollinger *qua* employer, not the subcontractor *qua* employer. Thus, as to the Amelia Overtime Class, Ruiz is not seeking

---

[37] R. Doc. 8-1 at 20-21.
[38] *Id.* at 19.

renumeration from Bollinger's other labor subcontractors, but directs his claims against only Bollinger and Masse. Therefore, the other subcontractors are not necessary parties.

### C. Defendants' Motion for a More Definite Statement

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Because this Court has already found that Ruiz's complaint is adequate to put Defendants on notice of his claims, a more definite statement is not warranted.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion (R. Doc. 8) is DENIED.

New Orleans, Louisiana, this 12th day of June, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE